UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE:                                                              CASE NO. 17-51160
AMERICAN TANK COMPANY, INC.
                Debtor                                 Chapter 11

                                                                      JUDGE SUMMERHAYS

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**MOTION FOR AUTHORITY TO INCUR PRIORITY
POST-PETITION PRIORITY DEBT WITH ADMINISTRATIVE CLAIM
STATUS ON EMERGENCY BASIS AND FOR HEARING**

    American Tank Company, Inc., ("Debtor" or "Company") the debtor in possession in this case, requests authority to incur post-petition debt up to the amount of $500,000.00 under the following terms and for the following reasons:

1.

This motion is brought pursuant to 11 U.S.C. §364(c)(1) and Rules 4001 and 9014 of the Bankruptcy Rules. The Court has jurisdiction pursuant to 11 U.S.C. 1334. This is a core proceeding as provided by 28 U.S.C. §157(b).

2.

The Debtor filed a petition for relief on the 5th of September, 2017.

The Debtor operates a going concern that does maintenance and construction on storage tanks. The debtor employs 25 employees.

3.

    Presently the Debtor does not have the funds to pay payroll due to the fact its customers do not routinely pay invoices for services performed by the debtor soon enough after invoicing to allow the debtor to have the cash flow required to pay all its obligations timely.

1

4.

Generally, Pittsburg Tank & Tower Company, Inc. ("Pittsburg") is willing to extend credit to the Debtor in the amount of $500,000 at interest at the rate of 7% per annum and according to the terms and conditions set forth in Exhibit 1 attached hereto which is the Promissory Note ("Note") that will evidence the debt. ("DIP credit facility" or "credit facility") This credit facility will be for the specified term as provided in the Note. Pittsburg will have the option to convert any unpaid balance to equity in the form of twenty-five percent (25%) of outstanding stock in the Debtor. A security agreement which will be executed in conjunction with the Note attached as Exhibit 2. The members of the Debtor, Lawrence and Rochelle M. Romero, will also pledge and assign a life insurance policy to Pittsburg and will execute a partial guaranty to Pittsburg in order to induce Pittsburg to provide the credit facility. Without this extension of credit the Debtor will not be able to pay payroll timely on Friday, September 9, 2017.

## **TERMS AND CONDITIONS OF CREDIT FACILITY SPECIFIED**

5.

The entire unpaid principal balance, together with accrued but unpaid interest thereon, shall be due in full on March 1, 2018, subject to rights of acceleration (the "Maturity Date") and subject to the right of Borrower to refinance the Loan, as set forth in paragraph "6" below. This Note is secured by collateral described in the following named documents, and may be further secured in the future by other collateral:

| Title | Date | Executed By |
|---|---|---|
| Security Agreement | September 9, 2017 | Borrower |

2

| Collateral Assignment of Life Insurance | September 9, 2017 | Larry J. Romero |

## **GUARANTORS**

Payment of this Note and all extensions hereof is guaranteed under the terms and conditions of the following named guaranties, and may be further secured in the future by other guarantors:

| Title | Date | Executed By |
|---|---|---|
| Limited Recourse Personal Guaranty | September 9, 2017 | Larry J. Romero |
| | | |

6.

On the Maturity Date, if Lender has not exercised the Conversion Option, ( specified below) and so long as no event of default exists at the time of maturity, Borrower may, in its discretion, refinance this Loan with Lender and repay the outstanding balance of this Loan and all accrued but unpaid interest thereon, through monthly payments calculated based upon an amortization schedule of one hundred twenty (120) months, utilizing the Note Rate set forth above, with payments due on the first day of each month, commencing on the first day of April, 2018, and with payments due and payable on the first day of each month thereafter through and including March 1, 2028, subject to rights of acceleration. In order to exercise the option to refinance this Loan, Borrower must provide Lender with written notice of such election at least thirty (30) days prior to the Maturity Date of this Note, and must, prior to maturity, execute an Installment Promissory Note in form and content prepared by Lender.

3

## CONVERSION AND PURCHASE

7.

At any time on or before the later of (i) thirty (30) days after the Maturity Date, or (ii) thirty (30) days after the "Effective Date" as defined in the Borrower's Chapter 11 plan of reorganization, Lender may, at Lender's option, convert the outstanding principal balance of this Note or the replacement Installment Promissory Note into voting stock of the Borrower (the "**Stock**") at a conversion price of Twenty Thousand Dollars ($20,000.00) for each one percent (1%) of the fully diluted issued and outstanding Stock of the Borrower, up to a maximum conversion price of Five Hundred Thousand Dollars ($500,000.00) and twenty five percent (25%) of the fully diluted issued and outstanding Stock of the Borrower (the "**Conversion Option**"). In the event the outstanding principal balance of this Note or the replacement Installment Promissory Note is less than Five Hundred Thousand Dollars ($500,000.00) at the time of conversion, Lender shall have the right to pay to Borrower the difference between Five Hundred Thousand Dollars ($500,000.00) and the outstanding principal balance for additional Stock so that upon conversion Lender owns twenty five percent (25%) of the fully diluted issued and outstanding Stock of the Borrower. Lender may exercise its conversion rights by delivery to Borrower of a notice of conversion and this Note or the replacement Installment Promissory Note (together, the "**Exercise Notice**"), along with certified funds for any additional Stock purchased by the Lender. Upon delivery of the Exercise Notice, Borrower shall promptly issue a stock certificate in an amount equal to sum of the unpaid amount of the Note or the replacement Installment Promissory Note with respect to which conversion rights have vested as of the date of the Exercise Notice and the additional Stock purchased by Lender. In the event of a recapitalization of Borrower in which the holders of Stock

receive additional or different equity interests on account of or in exchange for their Stock, the equity interests issuable to Lender upon conversion of this Note or the replacement Installment Promissory Note and the payment of any additional amounts by Lender shall be adjusted accordingly.

## ADDITIONAL OPTION

8.

In the event PTT elects to convert from debt to equity the $500,000.00 loan for which the Debtor seeks approval in this motion, PTT shall have an additional option to purchase 26% of the Debtor's fully diluted issued and outstanding stock for the sum of $500,000.00.

## REVOLVING LINE OF CREDIT

9.

The Note is given to evidence indebtedness, as it may exist from time to time, arising from periodic loan advances made by the Lender to the Borrower. Repayments of principal from time to time shall be credited against indebtedness evidenced by this Note, but shall not extinguish this Note in whole or in part. The unpaid principal balance may increase and decrease as loan advancements and repayments are made hereunder, and this Note shall evidence all of the indebtedness from time to time existing even though the aggregate principal cumulative loan advances hereunder may exceed the Lender's maximum commitment under this Note.

10.

In order to secure the advances made by Pittsburg, the Debtor will grant such security

5

interests in assets of the Debtor which are unencumbered as of the Petition Date such as any equipment owned by Debtor. Further, Pittsburg shall hold an administrative claim senior in rank and priority to all other administrative claims of the Debtor. Pittsburg is unwilling to advance funds to the Debtor without the granting to it of security interests in certain assets of the Debtor and also without the granting to it of an administrative claim. Therefore the requirements of 11 U.S.C. §364(b) and (c) are satisfied.

11.

The nature of the security interest to be granted will provide Pittsburg with an interest with priority over all other administrative expenses in the amount of $500,000.00 on the first funds received as described in the proposed Order. Pittsburg will not have a priming security interest or super priority lien over any existing, validly perfected, and allowed secured claim of any other creditor of the Debtor. The debtor proposes to repay the funds loaned by Pittsburg from revenue or from the funds generated by the operations of the Debtor and as the Debtor is able to in the business judgment of the Debtor.

**ADEQUATE PROTECTION**

12.

The Debtor will also keep all collateral insured and provide Pittsburg with ample information relating to projected revenues and expenses, actual revenue and expenses, and variances from the Interim Budget and Final Budget, as applicable, as well as reasonable access to, among other things, the Company's management, books, and records, and will provide the reporting required under the Credit Facility. *See, e.g., Mutual Benefit Life Ins. Co. v. Stanley Station Assocs., L.P . (In re Stanley Station Assocs., L.P .)*, 140 B.R. 806, 809 (D. Kan. 1992)

("In addition, we believe the request of MBL for 'timely filing of proper monthly operating reports…' falls within the ambit of adequate protection…"); *Smitomo Trust& Banking Co. v. Holly's, Inc.(In re Holly's, Inc.)*, 140 B.R. 643, 706 (Bankr. W.D. Mich. 1992) (reports required as part of adequate protection).

13.

There is no agreement with Pittsburg concerning adequate protection, security, or repayment of the DIP credit facility except as stated herein. There are no provisions in any agreement concerning the matters listed or delineated in Rule 4001(c)(1)(B)(ii,)(iii),(v)-(xi).

14.

The debtor cannot obtain a loan or credit from other sources given the current state of its financial affairs and the fact that it is currently a debtor in possession in this case.

## AUTOMATIC STAY RELIEF

15.

The Debtor further moves for relief from the automatic stay of 11 U.S.C. §362 as may be required to effectuate the transactions and conditions of the credit facility.

## NO PRIOR REQUEST

16.

There has been no prior request for relief of the kind or form requested herein.

## NO STAY

17.

The Debtor further requests that the stay provided in Rules 4001(a)(3) and 6004 of the Federal Rules of Bankruptcy Procedure be modified as allowed by law and that the order granting this Motion not be stayed or suspended.

**WHEREFORE** the Debtor prays that it be authorized to incur post-petition debt in an amount up to $500,000.00 from Pittsburg Tank & Tower Company, Inc. and affording it a post-petition priority administrative expense as described in the Order with priority over all other administrative expenses and a security interest in currently unencumbered assets of the Debtor, the limited guaranty of the members of the Debtor, security interest in and assignment of rights to a life insurance policy to be designated, and Conversion rights as stated in this Court's order, a form of which is attached, up to the amount of $500,000.00.

**THE DEBTOR FURTHER PRAYS** for all other relief appropriate herein.

Respectfully submitted,

THROUGH ITS ATTORNEY,
William C. Vidrine
/s/ William C. Vidrine
711 W. Pinhook Rd.
Lafayette, LA 70503
(337)-233-5195
LA Bar Roll No. 21398

*Counsel to American Tank Company, Inc.*